IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Civil Action No. |
| v. ) | |
| ) | Judge |
| ATP OIL & GAS CORPORATION; ) | |
| ATP INFRASTRUCTURE PARTNERS, LP, ) | |
| ) | |
| Defendants. ) | |
| ) | |

# COMPLAINT

The United States of America, by the authority of the Attorney General of the United States and through the undersigned attorneys, acting at the request of the Secretary of the United States Department of the Interior and the Administrator of the United States Environmental Protection Agency ("EPA"), files this Complaint and alleges as follows:

## NATURE OF THE ACTION

1. This is a civil action against ATP Oil & Gas Corporation and ATP Infrastructure Partners, LP ("ATP-IP") for civil penalties and injunctive relief pursuant to the Clean Water Act ("CWA") and the Outer Continental Shelf Lands Act ("OCSLA"). The Complaint addresses the defendants' unlawful discharges of oil and an unpermitted chemical dispersant from ATP's floating oil and gas production platform, the "ATP Innovator," into the Gulf of Mexico.

2. This Complaint includes the following six causes of action:

   (1) Civil penalties under CWA Section 309(d) for violations of CWA Section 301(a) for unauthorized chemical dispersant discharges;

(2) Civil penalties under CWA Section 309(d) for permit violations;

(3) Civil penalties under CWA Section 311(b)(7)(A) and (D) for oil discharge violations;

(4) Injunctive relief under OCSLA, 43 U.S.C. § 1350(a);

(5) Injunctive relief under CWA Section 309(b);

(6) Declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), declaring the applicability of the police and regulatory exception to the Bankruptcy Code's automatic stay pursuant to 11 U.S.C. § 362(b)(4).

3. The discharges and related violations were discovered in March 2012. ATP Oil & Gas Corporation filed for bankruptcy in August 2012 in the United States Bankruptcy Court for the Southern District of Texas (Houston Division). The bankruptcy court is being provided notice of the filing of this civil action. This action is exempt from the Bankruptcy Code's automatic stay based on the police and regulatory exception.

## JURISDICTION, AUTHORITY, AND VENUE

4. This Court has jurisdiction over this matter pursuant to Sections 309(b) and 311(b)(7)(E) and (n) of the CWA, 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and (n); 43 U.S.C. § 1350(a) (OCSLA); and 28 U.S.C. §§ 1331, 1345, 1355.

5. Authority to bring this action is vested in the United States Department of Justice by, *inter alia*, Section 506 of the CWA, 33 U.S.C. § 1366; 43 U.S.C. § 1350(a) (OCSLA); and 28 U.S.C. §§ 516 and 519.

6. Venue is proper in the Eastern District of Louisiana under Sections 309(b) and

2

311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E); 43 U.S.C. § 1350(a) (OCSLA); and 28 U.S.C. §§ 1391 and 1395 because ATP Oil & Gas Corporation is located and doing business in this district and this district is the nearest district to which the ATP Innovator is located.

## THE PARTIES

7.   Plaintiff United States of America is acting at the request of the United States Department of the Interior, through the Bureau of Safety and Environmental Enforcement ("BSEE"), and the United States Environmental Protection Agency. The Department of the Interior's Bureau of Ocean Energy Management ("BOEM") and BSEE oversee the subject oil and gas lease with ATP and associated operations through the Bureaus' Gulf of Mexico Outer Continental Shelf Region based in New Orleans, Louisiana.

8.   Defendant ATP Oil & Gas Corporation is a Texas corporation doing business in this district and on the Outer Continental Shelf. ATP Oil & Gas Corporation is, and at all relevant times has been, the operator of the ATP Innovator, the facility at issue in this case. ATP Oil & Gas Corporation was the owner of the ATP Innovator from at least 2006 to March 6, 2009.

9.   Defendant ATP-IP is a limited partnership company formed on March 6, 2009, by ATP Oil & Gas Corporation and GE Energy Financial Services to own and operate the ATP Innovator. ATP-IP is identified in ATP Oil & Gas Corporation's bankruptcy pleadings as a "non-debtor entity" in which ATP Oil & Gas Corporation holds a controlling interest.

## FACTS

10.   ATP Oil & Gas Corporation develops and produces natural gas and oil properties in the Gulf of Mexico, the North Sea, and the Mediterranean Sea.

3

11. ATP Oil & Gas Corporation has numerous oil and gas leases, rights-of-way, and rights-of-use and easement, as well as inactive sites, in the Gulf of Mexico. ATP Oil & Gas Corporation acquired these leases and other interests from BOEM pursuant to OCSLA.

12. ATP Oil & Gas Corporation built the ATP Innovator in 2006. The ATP Innovator is a floating production platform facility operating at Lease Block 711 of Mississippi Canyon in the Gulf of Mexico. The site is located approximately 45 nautical miles offshore of southeastern Louisiana, which is about 125 miles south of New Orleans. The ATP Innovator is permanently moored to the sea floor at that location and is not operating as a vessel or other floating craft. At all times relevant to this action, the ATP Oil & Gas Corporation and the ATP Innovator were engaged in the production of oil and natural gas at Lease Block 711.

13. ATP Oil & Gas Corporation holds the lease interest in Lease Block 711 of Mississippi Canyon. The Department of the Interior lease number is OCS-G 14016.

14. Since at least April 2007, ATP Oil & Gas Corporation has been allowed to discharge wastewater from the ATP Innovator into the Gulf of Mexico subject to a General Permit issued by EPA under the CWA's National Pollutant Discharge Elimination System ("NPDES") General Permit for the Western Portion of the Outer Continental Shelf of the Gulf of Mexico (General Permit Number GMG290000; ATP Permit No. GMG290157). The permit was issued pursuant to Section 402 of the CWA, 33 U.S.C. § 1342. Under the permit, ATP Oil & Gas Corporation is allowed to discharge, *inter alia*, a limited amount of oil in its wastewater. Under the permit, in addition to the collection of samples for analysis to confirm compliance with permit limits for oil, the "permittee shall monitor free oil using the visual sheen test method on the surface of the receiving water." NPDES Permit, Part I, Section B.4.b.

15. ATP Oil & Gas Corporation operates a float cell as an essential part of its wastewater treatment system to separate and remove oil and suspended solids from its production water prior to discharge under its NPDES permit.

16. In March 2012, BSEE inspectors aboard the ATP Innovator located a metal tube connected to the permitted NPDES outfall pipe used for overboard discharge of the facility's wastewater. The metal tube and connection to the outfall pipe was hidden in the rafters at a location downstream of the treatment units and the NPDES sampling point. Thus, injections from the tube into the outfall pipe are undetectable in NPDES samples.

17. The metal tubing was connected to a 550-gallon tank of Cleartron ZB-103, an amide surfactant chemical blended with methanol that, as used, acts to break apart oil molecules into smaller, dispersed droplets.

18. The manufacturer's Technical Data Sheet for Cleartron ZB-103 identifies the substance as a "dispersant."

19. The environmental precautions identified on the manufacturer's Material Safety Data Sheet for Cleartron ZB-103 include the following: "prevent runoff entering surface waterways. . . . Harmful to aquatic life."

20. On information and belief, the Cleartron ZB-103 dispersant was injected into the outfall pipe to mask oil sheen on the ocean surface resulting from ATP's discharge of wastewater containing quantities of oil in excess of its NPDES permit limit.

21. ATP contractors working aboard the ATP Innovator referred to the on-board use of Cleartron ZB-103 as "the soap" and "the sheen buster."

22. ATP Oil & Gas Corporation's NPDES permit does not authorize ATP to

discharge Cleartron ZB-103 into the ocean or any other waters. Moreover, the permit expressly states that the "operator shall minimize the discharge of dispersants, surfactants and detergents except as necessary to comply with the safety requirements of [OSHA, BSEE, and BOEM]. . . . The restriction is imposed because detergents disperse and emulsify oil, thereby increasing toxicity and making the detection of a discharge of oil more difficult." NPDES Permit, Part I, Section C.3.

23. Under EPA regulations, the "[a]ddition of dispersants or emulsifiers to oil to be discharged that would circumvent the provisions of this part is prohibited." 40 C.F.R. § 110.4. This regulation applies to "the discharges of oil prohibited by section 311(b)(3) of the Act." 40 C.F.R. § 110.2.

24. On information and belief, ATP Oil & Gas Corporation had been regularly purchasing and using significant quantities of Cleartron ZB-103 on the ATP Innovator from October 2010 to March 2012, and had been using an alternative chemical before then.

25. On information and belief, the inlet on the outfall pipe into which the metal tube was inserted is a permanent fixture attached to the outlet pipe, allowing access for future unlawful injections into the outfall pipe downstream of the NPDES sample point.

## CAUSES OF ACTION

### FIRST CAUSE OF ACTION

**Civil Penalties for Violations of CWA Section 301(a) – Dispersant Discharges**
**33 U.S.C. § 1311(a)**

26. The preceding paragraphs are realleged and incorporated herein.

27. ATP Oil & Gas Corporation is liable for civil penalties under Section 309(d) of

the CWA, 33 U.S.C. § 1319(d), based on violations of Section 301(a) of the CWA, 33 U.S.C. § 1311(a).

28. Section 309(d) of the CWA provides that "[a]ny person who violates section 1311 [CWA Section 301] . . . or any permit condition or limitation implementing any of such sections in a permit issued under section 1342 [CWA Section 402] . . . shall be subject to a civil penalty . . . ." 33 U.S.C. § 1319(d).

29. Under Section 301(a) of the CWA, "the discharge of any pollutant by any person" to federal waters is prohibited except as authorized by certain provisions of the Act. 33 U.S.C. § 1311(a).

30. ATP Oil & Gas Corporation's injection and unpermitted discharges of Cleartron ZB-103 were unauthorized discharges of a pollutant in violation of CWA Section 301(a) and ATP's NPDES permit.

31. ATP Oil & Gas Corporation is a "person" under the CWA. Section 502(5) of the CWA defines the term "person" to include a "corporation." 33 U.S.C. § 1362(5).

32. ATP Oil & Gas Corporation "discharged a pollutant" under the CWA. Section 502(12) of the CWA defines the term "discharge of a pollutant" to include "any addition of any pollutant to the waters of the contiguous zone or the ocean from any point source other than a vessel or other floating craft." 33 U.S.C. § 1362(12)(B).

33. ATP Oil & Gas Corporation discharged – or added – Cleartron ZB-103 into the Gulf of Mexico on a regular basis.

34. ATP Oil & Gas Corporation's discharges of Cleartron ZB-103 were discharges of a "pollutant" under the CWA. A "pollutant" as defined in Section 502(6) of the CWA includes

7

"dredged spoil, solid waste, . . . chemical wastes, . . . sand, . . . and industrial . . . waste discharged into water." 33 U.S.C. § 1362(6). The environmental precautions identified on the manufacturer's Material Safety Data Sheet for Cleartron ZB-103 state: "prevent runoff entering surface waterways. . . . Harmful to aquatic life."

35. ATP Oil & Gas Corporation's discharges of Cleartron ZB-103 from the ATP Innovator flowed directly into the Gulf of Mexico, ocean waters within the exclusive economic zone of the United States.

36. The discharges were from a "point source" under the CWA. The term is defined in Section 502(14) of the CWA to include "any discernible, confined and discrete conveyance, including but not limited to any pipe, ditch, channel, tunnel, conduit, well, discrete fissure, container, rolling stock, concentrated animal feeding operation, or vessel or other floating craft, from which pollutants are or may be discharged." 33 U.S.C. § 1362(14).

37. ATP Oil & Gas Corporation's discharges of Cleartron ZB-103 into the Gulf of Mexico were not authorized by a permit.

38. On information and belief, the dispersant discharges occurred daily during a period to be determined by the Court, but which includes at least October 2010 to March 20, 2012.

39. Defendant ATP Oil & Gas Corporation is liable for civil penalties under CWA Section 309(d) in amounts of up to $32,500 per day for each violation through January 12, 2009, and up to $37,500 per day for each violation occurring after January 12, 2009. *See* 40 C.F.R. § 19.4 (establishing, effective after January 12, 2009, that the per-day civil penalty amounts were increased to the listed amounts by the Civil Monetary Penalty Inflation Adjustment Rule).

## SECOND CAUSE OF ACTION

### Civil Penalties for Violations of CWA Section 309(d) – Permit Violations
### 33 U.S.C. § 1319(d)

40. The preceding paragraphs are realleged and incorporated herein.

41. ATP Oil & Gas Corporation is liable for civil penalties based on violations of its CWA permit. As discussed in the first cause of action above, CWA Section 309(d) provides that "[a]ny person who violates section [301] . . . or any permit condition or limitation implementing any of such sections in a permit issued under section 1342 [CWA Section 402] . . . shall be subject to a civil penalty . . . ."

42. ATP Oil & Gas Corporation's NPDES permit includes a duty to comply with the permit: "The permittee must comply with all conditions of this permit. Any permit noncompliance constitutes a violation of the Act and is grounds for enforcement action or for requiring a permittee to apply and obtain an individual NPDES permit." NPDES Permit, Part II, Section A.2.

43. ATP Oil & Gas Corporation's NPDES permit does not authorize ATP to discharge Cleartron ZB-103 into the Gulf of Mexico or any other waters.

44. ATP Oil & Gas Corporation violated Part I, Section C.3 of its NPDES discharge permit. Under this provision, the "operator shall minimize the discharge of dispersants, surfactants and detergents except as necessary to comply with the safety requirements of [OSHA, BSEE, and BOEM]. . . . The restriction is imposed because detergents disperse and emulsify oil, thereby increasing toxicity and making the detection of a discharge of oil more difficult." ATP's practice of discharging dispersants into the ocean is in violation of its permit.

9

45. ATP Oil & Gas Corporation violated Part II, Section B.2 of its NPDES discharge permit. ATP failed to minimize or prevent unlawful discharges from the ATP Innovator, as evidenced by the prolonged use of the dispersant in the outfall pipe, in violation of the permit.

46. ATP Oil & Gas Corporation violated Part II, Section B.3 of its NPDES discharge permit. ATP failed to properly operate and maintain all facilities and treatment systems at all times, as evidenced by the illegal injection of Cleartron ZB-103 dispersant into the outfall pipe, in violation of the permit.

47. ATP Oil & Gas Corporation violated Part II, Section C.2 of its NPDES discharge permit. ATP failed to take and measure samples that are representative of the monitored activity by sampling upstream of the Cleartron ZB-103 dispersant injection point, in violation of the permit.

48. On information and belief, the dispersant discharges occurred daily during a period to be determined by the Court, but which includes at least October 2010 to March 20, 2012.

49. Defendant ATP Oil & Gas Corporation is liable for civil penalties under CWA Section 309(d) in amounts of up to $32,500 per day for each violation through January 12, 2009, and up to $37,500 per day for each violation occurring after January 12, 2009. *See* 40 C.F.R. § 19.4 (listing these updated daily penalty rates).

### THIRD CAUSE OF ACTION

### Civil Penalties for Violation of CWA Section 311(b) – Oil Discharges
### 33 U.S.C. § 1321(b)

50. The preceding paragraphs are realleged and incorporated herein.

10

51. Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3), prohibits the "discharge of oil or any hazardous substances (i) into or upon the navigable waters of the United States, adjoining shorelines, or into or upon the waters of the contiguous zone, or (ii) in connection with activities under [OCSLA] . . . in such quantities as may be harmful . . . ."

52. Pursuant to Section 311(b)(7)(A) of the CWA, 33 U.S.C. § 1321(b)(7)(A), "[a]ny person who is the owner, operator, or person in charge of any . . . offshore facility . . . from which oil . . . is discharged in violation of paragraph (3), shall be subject to a civil penalty . . . ."

53. Civil penalties can be increased pursuant to Section 311(b)(7)(D) of the CWA, 33 U.S.C. § 1321(b)(7)(D), if the violation results from "gross negligence or willful misconduct."

54. Enforcement of these provisions supports the national objective to prevent and deter oil spills and "to restore and maintain the chemical, physical, and biological integrity of the Nation's waters." 33 U.S.C. §§ 1321(b)(1), 1251(a).

55. ATP Oil & Gas Corporations and ATP-IP are each a "person" within the meaning of Section 311(a)(7) of the CWA, 33 U.S.C. § 1321(a)(7).

56. ATP Oil & Gas Corporation is the "operator" of an offshore facility from which oil was discharged within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6).

57. ATP-IP is the "owner" of an offshore facility from which oil was discharged within the meaning of Section 311(a)(6) of the CWA, 33 U.S.C. § 1321(a)(6).

58. The ATP Innovator is an "offshore facility" within the meaning of Section 311(a)(11) of the CWA, 33 U.S.C. § 1321(a)(11).

59. The spilling of oil from the ATP Innovator into the Gulf of Mexico constituted a "discharge" of oil within the meaning of Section 311(a)(2) of the CWA, 33 U.S.C. § 1321(a)(2).

11

60. The discharges were of "oil" within the meaning of Section 311(a)(1) of the CWA, 33 U.S.C. § 1321(a)(1).

61. The discharges of oil were into or upon waters of the United States within the meaning of Sections 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3). The discharges flowed into the Gulf of Mexico and were in connection with ATP's activities under OCSLA.

62. The discharges were in a quantity "as may be harmful" within the meaning of Section 311(b)(3) and (4) of the CWA, 33 U.S.C. § 1321(b)(3)-(4), and 40 C.F.R. § 110.3.

63. Under EPA regulations, the "[a]ddition of dispersants or emulsifiers to oil to be discharged that would circumvent the provisions of this part is prohibited." 40 C.F.R. § 110.4. This regulation applies to "the discharges of oil prohibited by section 311(b)(3) of the Act." 40 C.F.R. § 110.2.

64. The manufacturer's Technical Data Sheet for Cleartron ZB-103 identifies the substance as a "dispersant."

65. Addition of the dispersant Cleartron ZB-103 to ATP's oily wastewater discharge works to mask the presence of oil sheen, which is the regulatory basis for identifying "quantities as may be harmful" under CWA Section 311(b)(3). Pursuant to its authority under the CWA, EPA has promulgated regulations that define "harmful" quantities of oil to include quantities that "[c]ause a film or sheen upon or discoloration of the surface of the water or adjoining shorelines or cause a sludge or emulsion to be deposited beneath the surface of the water or upon adjoining shorelines." 40 C.F.R. § 110.3.

66. Defendants' oil discharges are violations of Section 311(b)(3) of the CWA, 33 U.S.C. § 1321(b)(3).

12

67. On information and belief, the oil discharges occurred daily during a period to be determined by the Court, but which includes at least October 2010 to March 20, 2012.

68. Defendants ATP Oil & Gas Corporation and ATP-IP are liable for civil penalties under CWA Section 311(b)(7)(A), or under Section 311(b)(7)(D) if it is proved that the violations are the result of gross negligence or willful misconduct, of up to $32,500 per day for each violation through January 12, 2009, and up to $37,500 per day for each violation occurring after January 12, 2009. *See* 40 C.F.R. § 19.4 (listing these updated daily penalty rates).

## FOURTH CAUSE OF ACTION

### Injunctive Relief under OCSLA
### 43 U.S.C. § 1350(a)

69. The preceding paragraphs are realleged and incorporated herein.

70. Defendants ATP Oil & Gas Corporation and ATP-IP are liable for injunctive relief pursuant to OCSLA, 43 U.S.C. § 1350(a) for violations of OCSLA and its implementing regulations.

71. Pursuant to 43 U.S.C. § 1350(a): "At the request of the Secretary [of the Interior], . . . the Attorney General . . . shall institute a civil action . . . for a temporary restraining order, injunction, or other appropriate remedy to enforce any provision of this subchapter, any regulation or order issued under this subchapter, or any term of a lease, license, or permit issued pursuant to this subchapter."

72. The ATP Innovator is a "facility" within the meaning of OCSLA, as defined in 30 C.F.R. § 250.105.

73. ATP Oil & Gas Corporation is a "lessee" and an "operator" within the meaning of

13

OCSLA, as defined in 30 C.F.R. § 250.105.

74. ATP Oil & Gas Corporation and the ATP Innovator are engaged in the "production" of oil and natural gas within the meaning of OCSLA, as defined in 30 C.F.R. § 250.105

75. ATP Oil & Gas Corporation violated 30 C.F.R. § 250.802(a). Under this OCSLA regulation, "[a]ll production facilities, including separators, treaters, compressors, headers, and flowlines shall be designed, installed, and maintained in a manner which provides for efficiency, safety of operation, and protection of the environment." ATP Oil & Gas Corporation operates a float cell as an essential part of its wastewater treatment system to separate and remove oil and suspended solids from its production water prior to discharge under its NPDES permit. The float cell is a production facility subject to 30 C.F.R. § 250.802. Operation and maintenance of the float cell is integral to the operations of the ATP Innovator and to the protection of the environment. ATP Oil & Gas Corporation failed to operate and maintain the float cell in a manner that is protective of the environment, resulting in the discharge of oil in quantities that may be harmful into the Gulf of Mexico. The injection of Cleartron ZB-103 to the discharge outfall pipe also was not in accordance with this provision. The Cleartron ZB-103 pipe configuration was not protective of the environment, and adding the dispersant to outfall discharges to hide oil sheen indicates that the facility was not being maintained in a manner providing protection of the environment.

76. ATP Oil & Gas Corporation violated 30 C.F.R. § 250.300(a). Under this OCSLA regulation, ATP is required to "take measures to prevent unauthorized discharge of pollutants into the offshore waters. The lessee shall not create conditions that will pose unreasonable risk

to public health, life, property, aquatic life, wildlife, recreation, navigation, commercial fishing, or other uses of the ocean." ATP's discharges, and its failure to take measures to prevent discharges, of oil and its discharges of dispersants to mask the presence of oil on the ocean surface as discussed above were in violation of this pollution prevention regulation.

77. ATP Oil & Gas Corporation violated 30 C.F.R. § 250.107(a). Under this OCSLA regulation, ATP is required to "protect health, safety, property, and the environment by: (1) Performing all operations in a safe and workmanlike manner; and (2) Maintaining all equipment and work areas in a safe condition." The failure to properly operate the wastewater treatment system and the injection of the dispersant into the discharge pipe downstream of the sample point were not proper operation or maintenance of the equipment or facility. Further, the illegal injection line was concealed in the rafters in a manner that prevented inspectors from discovering it.

78. ATP Oil & Gas Corporation violated OCSLA, 43 U.S.C. § 1348(b)(2), which requires holders of OCSLA leases and permits to "maintain all operations . . . in compliance with regulations intended to protect persons, property, and the environment on the Outer Continental Shelf." This violation is evidenced by violations of the CWA discharge permit and OCSLA regulations described above. In addition, ATP Oil & Gas Corporation and ATP-IP violated EPA's oil spill regulation prohibiting the use of dispersants. Pursuant to 40 C.F.R. § 110.4, the "[a]ddition of dispersants or emulsifiers to oil to be discharged that would circumvent the provisions of this part [concerning CWA Section 311(b)(3)] is prohibited." Further, OCSLA regulations require that ATP's operations be conducted in accordance with OCSLA "and other applicable laws, regulations, and amendments," which includes the Clean Water Act. 30 C.F.R.

§ 250.101(a). Similarly, ATP Oil & Gas Corporation violated the terms of Section 1 of its lease, OCS-G 14016, which states that the lease is issued subject to OCSLA, OCSLA regulations, and "all other applicable statutes and regulations."

79. Injunctive relief measures are needed to ensure that similar violations do not recur. Because the violations and associated corrective measures relate to both operational practices and physical piping and treatment units on the ATP Innovator, injunctive relief is required from both the owner and the operator of the facility.

80. Remedies under OCSLA are "concurrent and cumulative and the exercise of one shall not preclude the exercise of the others. Further, the remedies and penalties prescribed in [OCSLA] shall be in addition to any other remedies and penalties afforded by any other law or regulation." 43 U.S.C. § 1350(e).

## FIFTH CAUSE OF ACTION

### Injunctive Relief under CWA Section 309(b)
### 33 U.S.C. § 1319(b)

81. The preceding paragraphs are realleged and incorporated herein.

82. Defendants ATP Oil & Gas Corporation and ATP-IP are liable for injunctive relief pursuant to Section 309(b) of the CWA.

83. Section 301(a) of the CWA, 33 U.S.C. § 1311(a), prohibits "the discharge of any pollutant by any person" except in compliance with enumerated sections. The discharges of dispersant and oil described above violated Section 301(a) of the CWA.

84. Section 309(b) of the CWA, 33 U.S.C. § 1319(b), is the enforcement provision for Section 301(a) and authorizes civil actions for "appropriate relief, including a permanent or

temporary injunction."

85. Injunctive relief measures are needed to ensure that similar violations do not recur. Because the violations and associated corrective measures relate to both operational practices and physical piping and treatment units on the ATP Innovator, injunctive relief is required from both the owner and the operator of the facility.

## SIXTH CAUSE OF ACTION

### Declaratory Judgment
### 28 U.S.C. §2201(a)

86. The preceding paragraphs are realleged and incorporated herein.

87. ATP Oil & Gas Corporation filed a voluntary petition for Chapter 11 bankruptcy in August 2012. ATP-IP is identified as a "non-debtor entity" in the bankruptcy pleadings.

88. Section 362(a)(1) of the Bankruptcy Code provides that the filing of a petition for bankruptcy operates as a stay of "the commencement or continuation . . . of a judicial proceeding against the debtor that was or could have been commenced before the commencement of the case under this title, or to recover a claim against the debtor that arose before the commencement of the case under this title." 11 U.S.C. § 362(a)(1).

89. Section 362(b)(4) of the Bankruptcy Code provides that the automatic stay specified in Section 362(a) does not apply to the "commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including the enforcement of a judgment other than a money judgment." 11 U.S.C. § 362(b)(4).

90. The United States' enforcement of environmental laws enacted to protect public

17

and environmental health, safety, and welfare is the quintessential exercise of police and regulatory authority. Civil penalties seek to punish and deter harmful conduct by the defendants and others in the industry, and injunctive relief seeks to prevent similar future misconduct and related harm from recurring.

91. The United States seeks a declaratory judgment pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a), that the police and regulatory exception to the automatic stay, in Section 362(b)(4) of the Bankruptcy Code, 11 U.S.C. § 362(b)(4), applies to this environmental enforcement action brought pursuant to the enforcement provisions of the Clean Water Act and the Outer Continental Shelf Lands Act.

92. Pursuant to Section 362(b)(4) of the Bankruptcy Code, any judgment for civil penalties determined by this Court as to ATP Oil & Gas Corporation will be recovered through the bankruptcy court.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff, United States of America, respectfully requests that this Court:

A. Enter a declaratory judgment that the relief sought by the United States falls within the police and regulatory exception pursuant to Section 362(b)(4) of the Bankruptcy Code, 11 U.S.C. § 362(b)(4), and is therefore not subject to the automatic stay provisions of Section 362(a);

B. Enter a judgment that Defendant ATP Oil & Gas Corporation is liable for civil penalties and injunctive relief pursuant to CWA Sections 301(a), 309(d) and 309(b); civil penalties pursuant to CWA Section 311(b); and injunctive relief pursuant to OCSLA, 43 U.S.C. § 1350(a);

C.   Enter a judgment that Defendant ATP-IP is liable for civil penalties pursuant to CWA Section 311(b) and injunctive relief pursuant to CWA Section 309(b) and OCSLA, 43 U.S.C. § 1350(a);

D.   Assess civil penalties against Defendant ATP Oil & Gas Corporation in an amount of up to $32,500 per day for each violation through January 12, 2009, and up to $37,500 per day for each violation occurring after January 12, 2009;

E.   Assess civil penalties against Defendant ATP Infrastructure Partners, LP in an amount of up to $37,500 per day for each violation occurring on and after March 6, 2009;

F.   Award injunctive relief against each Defendant as appropriate; and

G.   Grant the United States such other relief as the Court deems just and proper.

Respectfully submitted,

FOR THE UNITED STATES OF AMERICA:

*/s/ Ignacia S. Moreno*
IGNACIA S. MORENO
Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division


*/s/ Jason T. Barbeau*
JASON T. BARBEAU
Trial Attorney (D.C. Bar No. 468200)
JESSICA R. STYRON
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section

P.O. Box 7611, Ben Franklin Station
Washington, DC 20044
(202) 616-8908 (telephone)
(202) 616-6584 (facsimile)
jason.barbeau@usdoj.gov

DANA J. BOENTE
United States Attorney
Eastern District of Louisiana

SHARON D. SMITH
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, LA 70130
(504) 680-3004 (telephone)
Sharon.D.Smith@usdoj.gov