UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| UNITED STATES OF AMERICA | CIVIL ACTION |
| VERSUS | NO. 13-0262 |
| ATP OIL & GAS CORPORATION, et al. | SECTION: "G"(4) |

## ORDER

Before the Court is Plaintiff United States's Motion to Stay Proceedings,[1] wherein the United States requests that the Court stay all proceedings "until the conclusion of an active criminal investigation and any criminal proceedings resulting from the investigation relating to the matters at issue in this action."[2] After considering the pending motion, the memorandum in support, the response, and the applicable law, the Court will grant the motion.

## I. Background

### A. Factual Background

According to the United States, Defendant ATP Oil & Gas Corporation ("ATP"), is, and all relevant times has been, the operator of ATP Innovator, the facility at issue in this case. ATP was the owner of ATP Innovator from at least 2006 to March 6, 2009.[3] Defendant ATP Infrastructure Partners, LP ("Infrastructure Partners") is a limited partnership formed by ATP on March 6, 2009 to own and operate the ATP Innovator.[4]

The ATP Innovator is a floating production platform facility operating at Lease Block 711

---

[1] Rec. Doc. 77

[2] *Id.*

[3] Rec. Doc. 1 at ¶ 8.

[4] *Id.* at ¶ 9.

of Mississippi Canyon in the Gulf of Mexico. The ATP Innovator is permanently moored to the sea floor at a location and is not operating as a vessel or other floating craft, and has been engaged in the production of oil and natural gas.[5] ATP holds the lease interest in Lease Block 711 of Mississippi Canyon.[6] Since at least April 2007, ATP has been allowed to discharge wastewater from the ATP Innovator into the Gulf of Mexico subject to a General Permit issued by the Environmental Protection Agency ("EPA") under the Clear Water Act's ("CWA") National Pollutant Discharge Elimination System ("NPDES").[7] Under this permit, ATP is allowed to discharge a limited amount of oil in its wastewater.[8]

In March 2012, the United States claims that Bureau of Safety and Environmental Enforcement ("BSEE") inspectors aboard the ATP Innovator located a metal tube connected to the permitted NPDES outfall pipe used for overboard discharge of the facility's wastewater.[9] The United States also contends that the "metal tube and connection to the outfall pipe was hidden in the rafters at a location downstream of the treatment units and the NPDES sampling point. Thus, injections from the tube into the outfall pipe are undetectable in NPDES samples."[10]

Further, the metal tubing was connected to a 550-gallon tank of Cleartron ZB-103, an "amide surfactant chemical blended with methanol that, as used, acts to break apart oil molecules into smaller, dispersed droplets."[11] The United States believes that "the Cleartron ZB-103 dispersant was

---

[5] *Id.* at ¶ 12.

[6] *Id.* at ¶ 13.

[7] *Id.* at ¶ 14.

[8] *Id.*

[9] *Id.* at ¶ 16.

[10] *Id.*

[11] *Id.* at ¶ 17.

injected into the outfall pipe to mask oil sheen on the ocean surface resulting from ATP's discharge of wastewater containing quantities of oil in excess of its NPDES permit limit."[12] The United States notes that ATP's NPDES permit does not authorize it to use Cleartron ZB-103 and generally states that an operator should minimize the use of any dispersant, because dispersants emulsify oil, thereby increasing toxicity and making the detection of a discharge of oil more difficult.[13]

In response, the United States has brought six causes of action in this matter. First, it seeks civil penalties against ATP for violations of CWA Section 301(a), 33 U.S.C. § 1311(a), and other related sections, for dispersant discharges.[14] Second, the United States brings a cause of action against ATP for permit violations pursuant to CWA Section 309(d).[15] Third, the United States seeks civil penalties against both defendants, ATP and Infrastructure Partners, for oil discharges in violation of CWA Section 311(b).[16] In the United States's fourth cause of action, it requests injunctive relief under the Outer Continental Shelf Lands Act ("OCSLA"), 43 U.S.C. § 1350(a), against both defendants to remedy the alleged violations of law.[17] In the United States's fifth cause of action, it seeks similar injunctive relief against both defendants pursuant to the CWA Section 309(b).[18]

In the United States's sixth cause of action, it requests a declaratory judgment pursuant to 28 U.S.C. § 2201(a). The United States explains that in August of 2012, ATP filed for Chapter 11

---

[12] *Id.* at ¶ 20.

[13] *Id.* at ¶ 22.

[14] *See id.* at ¶¶ 26-39.

[15] *See id.* at ¶¶ 40-49.

[16] *See id.* at ¶¶ 50-68.

[17] *See id.* at ¶¶ 69-80.

[18] *See id.* at ¶¶ 81-85.

bankruptcy and identified Infrastructure Partners as a "non-debtor entity." The United States acknowledges that under Section 362(a)(1) of the Bankruptcy Code this would normally impose an automatic stay, but Section 362(b)(4) of the Bankruptcy Code expressly states that Section 362(a) will not apply to the "commencement or continuation of an action or proceeding by a governmental unit . . . to enforce such governmental unit's . . . police and regulatory power, including enforcement of a judgment other than a money judgment." Therefore, the United States seeks a declaratory judgment that the police and regulatory exception to the automatic stay applies "to this environmental enforcement action brought pursuant to the enforcement provisions of the Clean Water Act and Outer Continental Shelf Lands Act."[19]

### *B. Procedural Background*

The United States filed this action on February 11, 2013.[20] On October 28, 2013, the United States filed the pending motion to stay proceedings.[21] On November 12, 2013, Defendant Infrastructure Partners filed a response to the pending motion.[22] Defendant ATP has not filed an response.

## **II. Parties' Arguments**

In the pending motion, United States requests that the Court stay all proceedings "until the conclusion of an active criminal investigation and any criminal proceedings resulting from the investigation relating to the matters at issue in this action."[23] According to the United States, a stay is "appropriate at this point in the case to avoid interference with the approaching criminal

---

[19] *See id.* at ¶¶ 86-92.

[20] *Id.*

[21] Rec. Doc. 77.

[22] Rec. Doc. 80.

[23] Rec. Doc. 77.

prosecution."[24]

In response, Infrastructure Partners has asserted that "Infrastructure Partners does not oppose the Government's request for a stay, provided that entry of the stay does not affect Infrastructure Partners' ability, pursuant to 28 U.S.C. § 1292(b), to seek certification of the Court's June 30, 2013 decision denying Infrastructure Partners' motion to dismiss for interlocutory appeal."[25]

ATP Oil & Gas Corporation has not filed an response. However, in the pending motion, the United States represents that it consulted with counsel for ATP, who "authorized counsel for the United States to report that ATP does not oppose the motion to stay."[26]

### III. Law and Analysis

*A. Standard for a Stay*

It is undisputed that a district court has inherent power to "control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants,"[27] and this authority includes the district court's wide discretion to grant a stay in a pending matter.[28] When "the interests of justice seem[] to require such action," a court may exercise its discretion to stay civil proceedings, postpone discovery, or impose protective orders and conditions.[29]

It is well recognized that a district court "may stay a civil proceeding during the pendency

---

[24] Rec. Doc. 77-1 at p. 2.

[25] Rec. Doc. 80.

[26] Rec. Doc. 77.

[27] *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936).

[28] *In re Ramu Corp.*, 903 F.2d 312, 318 (5th Cir. 1990).

[29] *United States v. Kordel*, 397 U.S. 1, 12 n.27 (1970); *see also*, *Mayo v. Tri-Bell Indus.*, 787 F.2d 1007, 1012 (5th Cir. 1986).

of a parallel criminal proceeding."[30] Indeed, a district court may sometimes stay a civil action "until the criminal case or the likelihood of a criminal case is ended."[31] Federal district courts are empowered to stay civil proceedings pending the completion of parallel criminal prosecutions, even when the request for a stay is made by the prosecution.[32] Although "[t]he simultaneous prosecution of civil and criminal actions is generally unobjectionable" because of the different interests promoted in the different suits,[33] a stay of the pending civil action may be appropriate "when there is a real and appreciable risk of self-incrimination."[34] In fact, in some circumstances, a district court abuses its discretion by failing to stay discovery until applicable criminal statutes of limitation have run, if the stay would not impose undue hardship on the non-moving party.[35]

Although the Fifth Circuit has determined that a stay may be warranted where "special circumstances" exist to prevent a party from suffering substantial and irreparable prejudice,[36] courts within the Fifth Circuit have looked to six factors to determine whether the civil action should be stayed.[37] These factors include:

---

[30] *SEC v. First Fin. Grp. of Tex., Inc.*, 659 F.2d 660, 668 (5th Cir. 1981).

[31] *DeLeon v. City of Corpus Christi*, 488 F.3d 649, 655 (5th Cir. 2007) (citing *Wallace v. Kato*, 549 U.S. 384, 394 (2007) (citing *Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706, 730 (1996))).

[32] *Kordel*, 397 U.S. at 12 n. 27 ("Federal courts have deferred civil proceedings pending the completion of parallel criminal prosecutions when the interests of justice seemed to require such action, sometimes at the request of the prosecution.") (citing *Campbell v. Eastland*, 307 F.2d 478 (5th Cir. 1962)).

[33] *First Fin. Grp.*, 659 F.2d at 667.

[34] *Brumfield v. Shelton*, 727 F.Supp. 282, 284 (E.D. La. 1989) (citing *Kordel*, 391 U.S. at 8-9).

[35] *See Wehling*, 608 F.2d at 1084 (district court abused its discretion in forcing plaintiff to choose between his Fifth Amendment right to silence and his lawsuit).

[36] *First Fin. Grp.*, 659 F.2d at 668; s*ee also, United States v. Little Al*, 712 F.2d 133, 136 (5th Cir. 1983).

[37] *Alcala v. Tex. Webb Cty.*, 625 F. Supp. 2d 391, 399 (S.D. Tex. 2009) (collecting district court cases within the Fifth Circuit applying this test); *see also, Lebouef v. Global X-Ray and Testing Corp.*, No. 07-5755, 2008 U.S. Dist. LEXIS 6470, at *4 (E.D. La. Jan. 29, 2008) (Barbier, J.) ("To determine whether special circumstances exist, the court must 'balance the competing constitutional and procedural interests of the parties,' as illustrated through the six-factor test . . . .") (citation omitted).

    1.       The extent to which the issues in the criminal case overlap with those presented in the civil case;
    2.       The status of the criminal case, including whether the defendant has been indicted;
    3.       The private interests of the plaintiff in proceeding expeditiously, weighed against the prejudice to the plaintiff caused by the delay;
    4.       The private interests of and burden on the defendant;
    5.       The interests of the courts; and
    6.       The public interest.[38]

## *B. Application of the Factors for Issuance of a Stay*

*1. The extent to which the issues in the criminal case overlap with those presented in the civil case*

Where there exists overlap between the civil and criminal proceedings, courts often feel compelled to grant a stay.[39] Many courts have found that "the similarity of the issues in the underlying civil and criminal actions is considered the most important threshold issue in determining whether to grant a stay."[40] The United States asserts that both the civil and the criminal matters at issue here "involve Clean Water Act violations that focus on the discharges from the ATP Innovator." Defendants do not dispute that the matters overlap. Therefore, this factor weighs in favor of issuing a stay.

*2. Status of Criminal Proceedings*

Even when there are not yet criminal charges filed, "this fact does not militate against the granting of a stay of discovery."[41] In fact, some district courts within this Circuit have found that "when the government seeks a stay of civil discovery, the justification for obtaining a stay is often strongest before an indictment is handed down."[42] Here, the pending civil case is poised to begin discovery, which could disrupt the progress of the criminal investigation. Therefore, this factor weighs in favor

---

[38] *Alcala*, F.Supp. 2d at 399.

[39] *Astoria Entm't, Inc. v. Edwards*, No. 98-3359, 1999 U.S. Dist. LEXIS 6040, at *3 (E.D. La. Apr. 22, 1999) (Duval, J.).

[40] *See, e.g., Dominguez v. Hartford Fin. Servs. Grp.*, 530 F. Supp.2d 902, 906-07 (S.D. Tex. 2008).

[41] *SEC v. Offill*, No. 07-1643, 2008 WL 958072, at *3 (N.D. Tex. Apr. 9, 2008).

[42] *Id.* at *2-3.

of a stay.

### 3. Plaintiff's Interest

Plaintiff has filed the pending motion to stay. Therefore, this factor weighs strongly in favor of a stay.

### 4. Defendants' Burden

Defendant ATP has not responded to the motion to stay.[43] Defendant Infrastructure Partners has not opposed the stay, although it has requested that the stay not preclude an appeal of this Court's interlocutory Order without any further briefing addressed to the motion to stay on that issue.[44] Therefore, Defendant Infrastructure Partners has not carried its burden on this factor, or, at least, any burden to Infrastructure Partners by staying these proceedings is unclear.

### 5. The Court's Interest

"The Court has interests in judicial economy and expediency,"[45] and granting a stay serves those interests because "conducting the criminal proceedings first advances [] judicial economy."[46] If a stay were not granted, it is almost certain that duplicative discovery and legal findings would occur. Furthermore, allowing the criminal suit to proceed first may "streamline" this matter. Therefore, this factor also weighs in favor of granting a stay.

---

[43] Counsel for ATP previously filed a Motion to Withdraw as Counsel, which the magistrate judge granted. Rec. Doc. 51; Rec. Doc. 60. This Court later vacated the magistrate judge's order granting the motion because the magistrate judge failed to take into consideration that corporations cannot proceed *pro se*. Rec. Doc. 65. During a status conference held on November 1, 2013, counsel inquired whether the Court would reconsider their motion to withdraw, and the Court instructed that counsel re-urge the request in a written motion. *See* Rec. Doc. 79. The Court notes that counsel has not re-urged the request. Therefore, this matter will not be resolved until after the stay has been lifted.

[44] *See* Rec. Doc. 53.

[45] *Doe v. Morris*, No. 11-1532, 2012 U.S. Dist. LEXIS 12454, at *6 (E.D. La. Feb. 2, 2012) (Vance, C.J.)..

[46] *Offill*, 2008 WL 958072, at *3.

*6. The Public Interest*

The Fifth Circuit has recognized that the public interest in law enforcement efforts through criminal investigation and prosecution of alleged wrongdoing is substantial:

> The very fact that there is clear distinction between civil and criminal actions requires a government policy determination of priority: which case should be tried first. Administrative policy gives priority to the public interest in law enforcement. This seems so necessary and wise that a trial judge should give substantial weight to it in balancing the policy against the right of a civil litigant to a reasonably prompt determination of his civil claims or liabilities.[47]

As noted above, Plaintiff United States has requested the stay, ATP has not opposed the stay, and Infrastructure Partners only notes that a stay could impact its possible appeal of an interlocutory order.[48] Therefore, the sixth factor also weighs in favor of a stay.

### IV. Conclusion

On balance, this Court finds that the factors weigh in favor of a stay. Accordingly,

**IT IS HEREBY ORDERED** that the motion is **GRANTED** and that this litigation will be stayed for sixty days;

**IT IS FURTHER ORDERED** that if the United States has not filed criminal charges after the sixty day stay, it must provide the Court with an *in camera* review so that the Court can assess the status of the grand jury investigations;

---

[47] *Campbell*, 307 F.2d at 487.

[48] The Court notes that granting such a request is within the sound discretion of the trial court. *Swint v. Chambers County Com'n*, 514 U.S. 35, 46 (1995) (explaining that in passing 28 U.S.C. § 1292, "Congress thus chose to confer on district courts first line discretion to allow interlocutory appeals"); *see also In re The Matter of Ichinose*, 946 F.2d 1169 (5th Cir. 1991) (instructing that a district court should only grant an interlocutory appeal when "(1) a controlling issue of law [is] involved; (2) the question [is] one where there is substantial ground for a difference of opinion; and (3) an immediate appeal [will] materially advance ultimate termination of the litigation").

**IT IS FURTHER ORDERED** that if criminal charges are filed within sixty days of this order, this matter will remain stayed until such time as the criminal matter is resolved. The United States attorney is to provide the Court with the status of this matter every six months.

**NEW ORLEANS, LOUISIANA**, this  26th  day of November, 2013.

*Nannette Jolivette Brown*
**NANNETTE JOLIVETTE BROWN**
**UNITED STATES DISTRICT JUDGE**