**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA**

| | |
|---|---|
| _____ ) | |
| **UNITED STATES OF AMERICA,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | **Civil Action No. 2:13-cv-262** |
| **v.** ) | |
| ) | **Judge Nannette Jolivette Brown** |
| **ATP OIL & GAS CORPORATION;** ) | |
| **ATP INFRASTRUCTURE PARTNERS, LP,** ) | **Mag. Karen Wells Roby** |
| ) | |
| **Defendants.** ) | |
| _____ ) | |

# PARTIAL CONSENT DECREE

WHEREAS, Plaintiff, the United States of America, on behalf of the United States Department of the Interior ("DOI"), through the Bureau of Safety and Environmental Enforcement ("BSEE"), and the United States Environmental Protection Agency ("EPA"), filed a Complaint against ATP Oil & Gas Corporation ("ATP") and ATP Infrastructure Partners, LP ("ATP-IP"), on February 11, 2013, alleging the unlawful discharges of oil and an unpermitted chemical dispersant from the offshore oil and gas production platform known as the "ATP Innovator" into the Gulf of Mexico, and seeking civil penalties and injunctive relief pursuant to the Clean Water Act ("CWA") and the Outer Continental Shelf Lands Act ("OCSLA").

WHEREAS, ATP-IP was and is the owner of the ATP Innovator, and ATP was at all relevant times the operator of the facility.

WHEREAS, ATP Oil & Gas Corporation's alleged unlawful discharges of pollutants and related violations were discovered by BSEE in March 2012.

WHEREAS, ATP Oil & Gas Corporation filed for bankruptcy in August 2012 in the

United States Bankruptcy Court for the Southern District of Texas (Houston Division, Case No. 12-36187), and in June 2013, the Bankruptcy Court approved ATP's motion to reject its contract with ATP-IP to operate the ATP Innovator and ATP's OCSLA lease for the related oil and gas production activities.

WHEREAS, ATP departed from the ATP Innovator in June 2013.

WHEREAS, ATP-IP denies the violations alleged in the Complaint and does not admit liability to the United States arising out of the occurrences alleged in the Complaint except as specified in the Answer to the Complaint.

WHEREAS, the Court denied ATP-IP's motion to dismiss.

WHEREAS, ATP-IP represents that (1) the piping that ran from a tank of dispersant to the discharge pipe on the ATP Innovator has been removed (though the dispersant injection connection point on the discharge pipe remains); (2) the ATP Innovator has ceased operations (and thus also ceased wastewater discharges) and has been removed from the deepwater of the Gulf of Mexico; (3) the ATP Innovator now resides at the Port of Corpus Christi, Texas; (4) its primary source of income was derived from leasing the ATP Innovator for oil and gas production activities; (5) it has not received income for over a year; and (6) it currently has no plans to use or lease the ATP Innovator for operation in waters within the jurisdiction of the United States.

WHEREAS, ATP is not a party to this decree and the claims against ATP remain for future resolution.

WHEREAS, the Parties recognize, and the Court by entering this Consent Decree finds, that this Consent Decree has been negotiated by the Parties in good faith and will avoid litigation between the Parties on the claims addressed in the Consent Decree, and that this Consent Decree

2

is fair, reasonable, and in the public interest.

**NOW, THEREFORE**, before taking testimony and without adjudication or admission of any issue of fact or law except as provided above and in Section I, below, and with the consent of the Parties, IT IS HEREBY ADJUDGED, ORDERED, AND DECREED as follows:

## I.  <u>JURISDICTION AND VENUE</u>

1.      This Court has jurisdiction over the subject matter of the United States' claim in this action pursuant to 28 U.S.C. §§ 1331, 1345, and 1355; Sections 309(b) and 311(b)(7)(E) and (n) of the CWA, 33 U.S.C. 33 U.S.C. §§ 1319(b), 1321(b)(7)(E) and (n); and 43 U.S.C. § 1350(a) (OCSLA).  The Court has personal jurisdiction over the Parties to this Consent Decree.

2.      Venue lies in this judicial district pursuant Sections 309(b) and 311(b)(7)(E) of the CWA, 33 U.S.C. §§ 1319(b) and 1321(b)(7)(E); 43 U.S.C. § 1350(a) (OCSLA); and 28 U.S.C. §§ 1391 and 1395.

3.      For purposes of this Decree, or any action to enforce this Decree, ATP-IP consents to the Court's jurisdiction over this Decree or such action and over ATP-IP, and consents to venue in this judicial district.

## II.  <u>APPLICABILITY</u>

4.      The obligations of this Consent Decree apply to and are binding upon the United States and upon ATP-IP and ATP-IP's successors and assigns.

5.      No transfer of ownership or operation of the Facility shall relieve ATP-IP of its obligation to ensure that the terms of the Decree are implemented.  At least 30 Days prior to such transfer, ATP-IP shall provide a copy of this Consent Decree to the proposed transferee and

written notice of the prospective transfer to the United States in accordance with Section XI (Notices).  The transfer of ownership or operation of the Facility without complying with this Paragraph constitutes a violation of this Decree.

6.      In any action to enforce this Consent Decree, ATP-IP shall not raise as a defense the failure by any of its officers, directors, employees, agents, or contractors to take any actions necessary to comply with the provisions of this Consent Decree.

### III. <u>DEFINITIONS</u>

7.      Terms used in this Consent Decree that are defined in the CWA or OCSLA, or in regulations promulgated thereunder, shall have the meanings assigned to them therein, unless otherwise provided in this Decree.  Whenever the terms set forth below are used in this Consent Decree, the following definitions shall apply:

a.      "ATP" shall mean defendant ATP Oil & Gas Corporation.

b.      "ATP-IP" shall mean defendant ATP Infrastructure Partners, LP.

c.      "BSEE" shall mean the United States Department of the Interior's Bureau of Safety and Environmental Enforcement and any of its successor bureaus or agencies.

d.      "Complaint" shall mean the complaint filed by the United States in this action.

e.      "Consent Decree" or "Decree" shall mean this document.

f.      "CWA" shall mean the Clean Water Act.

g.      "Day" shall mean a calendar day unless expressly stated to be a working day.  In computing any period of time under this Consent Decree, the rules set forth in Rule 6(a) of the Federal Rules of Civil Procedure shall be followed.

4

h.      "DOI" shall mean the United States Department of the Interior.

i.      "Effective Date" shall have the definition provided in Section XII.

j.      "EPA" shall mean the United States Environmental Protection Agency and any of its successor departments or agencies.

k.      "Facility" shall mean the floating oil and gas production platform owned by ATP-IP that has been and continues to be known as the "ATP Innovator."

l.      "NPDES" shall mean the CWA's National Pollutant Discharge Elimination System.

m.      "OCSLA" shall mean the Outer Continental Shelf Lands Act.

n.      "OPA" shall mean the Oil Pollution Act.

o.      "Paragraph" shall mean a portion of this Decree identified by an Arabic numeral.

p.      "Parties" shall mean the United States, on behalf of EPA, BSEE, and DOI, and ATP-IP.

q.      "Plaintiff" shall mean the United States, on behalf of EPA and DOI.

r.      "Section" shall mean a portion of this Decree identified by a Roman numeral.

s.      "United States" shall mean the United States of America.

## IV.  CIVIL PENALTY

8.      Within 30 Days after the Effective Date of this Consent Decree, ATP-IP shall pay to the United States the sum of one million dollars ($1,000,000.00), plus interest, as a civil penalty.  Interest shall accrue from the date on which this Decree is lodged with the Court, at the

rate specified in 28 U.S.C. § 1961, as of the date of lodging.

9.      ATP-IP shall pay the civil penalty due by FedWire Electronic Funds Transfer

("EFT") to the U.S. Department of Justice in accordance with written instructions to be provided

to ATP-IP, following lodging of the Consent Decree, by the Financial Litigation Unit of the U.S.

Attorney's Office for the Eastern District of Louisiana.  Such monies are to be deposited in the

Oil Spill Liability Trust Fund.  The payment shall reference the Civil Action Number assigned to

this case and DOJ Number 90-5-1-1-10681/1 and shall specify that the payment is made toward

CWA Section 311 civil penalties to be deposited into the Oil Spill Liability Trust Fund pursuant

to 33 U.S.C. § 1321(s) and 26 U.S.C. § 9509(b)(8).

10.     At the time of payment, ATP-IP shall send a copy of the EFT authorization form

and the EFT transaction record, together with a transmittal letter, which shall state that the

payment is for the civil penalty owed pursuant to the Consent Decree in this case, and shall

reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-10681/1, to

the United States in accordance with Section XI of this Decree (Notices) and by email to

acctsreceivable.CINWD@epa.gov and by mail to:

>           Stephen C. Ewart
>           National Pollution Funds Center
>           4200 Wilson Boulevard, Suite 1000
>           Arlington, VA 22203-1804
>
>           Commander
>           United States Coast Guard
>           Office of Claims and Litigation
>           2100 Second Street, S.W.
>           Washington, DC 20593-0001
>
>           EPA Cincinnati Finance Office
>           26 Martin Luther King Drive

6

Cincinnati, Ohio 45268

11.     ATP-IP shall not deduct the civil penalties paid under this Section in calculating

its federal income tax.

## V.  <u>INJUNCTIVE RELIEF</u>

12.     Within 90 Days after the Effective Date of this Consent Decree, ATP-IP shall

remove and permanently seal the dispersant injection connection from the wastewater discharge

outfall pipe on the ATP Innovator.  Within 10 Days after completion of this task, ATP-IP shall

submit to the United States, in accordance with Section XI (Notices) of this Decree, a written

report documenting the removal and sealing of the connection and injection point.  The report

shall include a detailed description of the work conducted, photographs – with accurate date and

times stamps – taken before and after the corrective measures are performed, and the name and

job title of the photographer.

13.     At least 30 Days before ATP-IP uses, leases, or otherwise allows for the use of

the ATP Innovator in any future exploration, development, or production activities in waters

within the jurisdiction of the United States, ATP-IP shall submit to the United States, in

accordance with Section XI (Notices) of this Decree, a certification that the Facility meets the

following requirements:

    a.     the Facility has sufficient wastewater treatment equipment and operational

plans to meet and maintain NPDES permit discharge limits and to prevent unlawful discharge of

pollutants to offshore waters, at all times;

    b.     the Facility surface production-safety systems will be maintained in a manner

that provides for protection of the environment in accordance with 30 C.F.R. § 250.802(a); and

c.   all Facility operations will be performed in a safe and workmanlike manner in accordance with 30 C.F.R. § 250.107(a).

14.   ATP-IP shall provide written notice to the United States, in accordance with Section XI (Notices) of this Decree, if and when any additional wastewater treatment equipment or surface production-safety equipment is installed on the Facility, if such installation occurs prior to the certification required in the preceding Paragraph.  ATP-IP shall also provide written notice to the United States, in accordance with Paragraph 5 and Section XI (Notices) of this Decree, of any prospective sale or transfer of ownership of the ATP Innovator, and when ATP-IP first sells, salvages, or scraps the Facility, or when it leases or otherwise uses the Facility for exploration, development, or production activities.

15.   In the event the Facility is used in the future by ATP-IP or any of its subsidiaries or related entities for exploration, development, or production activities in waters within the jurisdiction of the United States, ATP-IP must include the following language in any contractual or lease agreement:

> Between 6 and 9 months after initiating operations that include discharge of wastewater, the operator shall have a qualified, independent, third party consultant, subject to BSEE approval, audit its wastewater treatment operations and surface production-safety systems for compliance with the Clean Water Act and OCSLA and prepare a report that includes the consultant's findings and recommendations.  The consultant's written audit report shall be completed and provided to ATP-IP and the operator within 30 days of initiation of the audit. Within 30 days of receipt of the written audit report, the operator shall provide written notification to ATP-IP of all actions taken or to be taken to correct any concerns identified in the audit; if the operator does not plan to correct any concern identified in the audit, the notification must include a written explanation supporting that decision.

Within 10 Days of receipt from the operator of the written notification described in the preceding lease agreement language, ATP-IP shall submit to EPA and BSEE the full audit report and the

8

operator's written notification in accordance with Section XI (Notices) of this Decree

16.     ATP-IP shall submit the following reports to the United States in accordance with Section XI (Notices) of this Decree:

a.     Upon completion of the task in Paragraph 12, ATP-IP shall submit a report as described in Paragraph 12.

b.     Within 6 months after the Effective Date, and every 6 months thereafter until termination of this Consent Decree, ATP-IP shall submit a report describing the current location and ownership of the Facility, and, if the Facility is operating in waters within the jurisdiction of the United States, a description of any new surface production-safety or pollution control equipment discussed in this Section, along with a summary of costs incurred obtaining and installing such equipment.

17.     Each notice, certification, or report submitted by ATP-IP under this Section shall be signed by a responsible corporate official of the submitting party and include the following certification:

I certify under penalty of law that this document and all attachments were prepared under my direction or supervision in accordance with a system designed to assure that qualified personnel properly gather and evaluate the information submitted.  Based on any personal knowledge I may have and my inquiry of the person or persons who manage the system, or those persons directly responsible for gathering the information, the information submitted is, to the best of my knowledge and belief, true, accurate, and complete.  I am aware that there are significant penalties for submitting false information, including the possibility of fine and imprisonment for knowing violations.

18.     The reporting requirements of this Consent Decree do not relieve ATP-IP of any reporting obligations required by the CWA or OCSLA and their implementing regulations, or by any other federal, state, or local law, regulation, or requirement.

19.     Any information provided pursuant to this Consent Decree may be used by the United States in any proceeding to enforce the provisions of this Decree and as otherwise permitted by law.

20.     ATP-IP shall retain all documents in its possession related to the violations alleged in the Complaint and all underlying documents from which they have compiled any report or other submission required by this Consent Decree until at least five years after termination of this Decree.  If ATP-IP initiates the process of dissolving before expiration of this five-year period, it shall promptly notify the United States pursuant to Section XI (Notices), and upon request by the United States, ATP-IP shall deliver any documents in its possession to EPA and BSEE.  ATP-IP may assert that certain documents, records, or other information is privileged under the attorney-client privilege or any other privilege recognized by federal law.  If ATP-IP asserts such a privilege, it shall provide the following:  (a) the title of the document, record, or information; (b) the date of the document, record, or information; (c) the name and title of each author of the document, record, or information; (d) the name and title of each addressee and recipient; (e) a description of the subject of the document, record, or information; and (f) the privilege asserted by ATP-IP.  However, no documents, records, or other information required to be created or generated pursuant to the requirements of this Consent Decree shall be withheld on grounds of privilege.

## VI.  <u>STIPULATED PENALTIES</u>

21.     If ATP-IP fails to pay the civil penalty and interest required under Section IV (Civil Penalties) when due, ATP-IP shall pay a stipulated penalty of twenty-five hundred dollars ($2,500) per Day for each Day that payment is late.  Late payment of a civil penalty and payment

of any stipulated penalties shall be made in accordance with payment instructions in Section IV above.  All transmittal correspondence shall state that any such payment is for late payment of the civil penalty due under this Consent Decree or for stipulated penalties for late payment of the civil penalty, as applicable.  ATP-IP shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-10681/1 and shall specify that the payments are for stipulated penalties to be deposited into the United States Treasury.

22.     If ATP-IP fails to perform or comply with the Injunctive Relief measure in Paragraph 12 above, ATP-IP shall pay a stipulated penalty of ten thousand dollars ($10,000) per Day for each Day that such performance requirement is late or not complied with.  If ATP-IP fails to perform or comply with any other Injunctive Relief measure in Section V above, ATP-IP shall pay a stipulated penalty of two thousand dollars ($2,000) per Day for each Day that such performance requirement is late or not complied with.  Payment of any stipulated penalties shall be made in accordance with payment instructions in Section IV above.  All transmittal correspondence shall state that any such payment is for late performance or lack of compliance with injunctive relief requirements under this Consent Decree.  ATP-IP shall reference the Civil Action Number assigned to this case and DOJ Number 90-5-1-1-10681/1 and shall specify that the payments are for stipulated penalties to be deposited into the United States Treasury.

23.     Stipulated penalties under this Section shall begin to accrue on the Day after performance is due and shall continue to accrue until performance is satisfactorily completed.  Stipulated penalties shall accrue simultaneously for separate violations of this Consent Decree.

24.     ATP-IP shall pay any stipulated penalty within 30 Days of receiving a written demand.

11

25.     The United States, in the unreviewable exercise of discretion, may reduce or waive stipulated penalties otherwise due under this Consent Decree.

26.     ATP-IP shall not deduct stipulated penalties paid under this Section in calculating federal income tax.

27.     If ATP-IP fails to pay stipulated penalties according to the terms of this Consent Decree, ATP-IP shall be liable for interest on such penalties, as provided for in 28 U.S.C. § 1961, accruing as of the date payment became due.  Nothing in this Paragraph shall be construed to limit the United States from seeking any remedy otherwise provided by law for ATP-IP's failure to pay any stipulated penalties.

28.     Subject to the provisions of Section IX of this Consent Decree (Effect of Settlement/Reservation of Rights), the stipulated penalties provided for in this Consent Decree shall be in addition to any other rights, remedies, or sanctions available to the United States for ATP-IP's violation of this Consent Decree or applicable law.

## VII.  <u>FORCE MAJEURE</u>

29.     "Force majeure," for purposes of this Consent Decree, is defined as any event arising from causes beyond the control of ATP-IP, of any entity controlled by ATP-IP, or of ATP-IP's contractors that delays or prevents the performance of any obligation under this Consent Decree despite ATP-IP's best efforts to fulfill the obligation.  The requirement that ATP-IP exercise "best efforts to fulfill the obligation" includes using best efforts to anticipate any potential force majeure event and best efforts to address the effects of any potential force majeure event (a) as it is occurring and (b) following the potential force majeure, such that the delay and any adverse effects of the delay are minimized.  "Force Majeure" does not include

12

ATP-IP's financial inability to perform any obligation under this Consent Decree.

30.     If any event occurs or has occurred that may delay the performance of any obligation under this Consent Decree, whether or not caused by a force majeure event, ATP-IP shall provide notice orally or by electronic or facsimile transmission to the persons required to receive notice pursuant to Section XI for the United States, within 5 Days of when ATP-IP first knew that the event might cause a delay.  Within 10 Days thereafter, ATP-IP shall provide in writing to the United States an explanation and description of the reasons for the delay; the anticipated duration of the delay; all actions taken or to be taken to prevent or minimize the delay; a schedule for implementation of any measures to be taken to prevent or mitigate the delay or the effect of the delay; ATP-IP's rationale for attributing such delay to a force majeure event if it intends to assert such a claim; and a statement as to whether, in the opinion of ATP-IP, such event may cause or contribute to an endangerment to public health, welfare or the environment.  ATP-IP shall include with any notice all available documentation supporting the claim that the delay was attributable to a force majeure.  Failure to comply with the above requirements shall preclude ATP-IP from asserting any claim of force majeure for that event for the period of time of such failure to comply, and for any additional delay caused by such failure. ATP-IP shall be deemed to know of any circumstance of which ATP-IP, any entity controlled by ATP-IP, or ATP-IP's contractors knew or should have known.

31.     If the United States agrees that the delay or anticipated delay is attributable to a force majeure event, the time for performance of the obligations under this Consent Decree that are affected by the force majeure event will be extended by the United States for such time as is necessary to complete those obligations.  An extension of the time for performance of the

obligations affected by the force majeure event shall not, of itself, extend the time for performance of any other obligation.  The United States will notify ATP-IP in writing of the length of the extension, if any, for performance of the obligations affected by the force majeure event.

32.     If the United States does not agree that the delay or anticipated delay has been or will be caused by a force majeure event, the United States will notify ATP-IP in writing of its decision.

33.     If ATP-IP elects to invoke the dispute resolution procedures set forth in Section VIII (Dispute Resolution), it shall do so no later than 30 Days after receipt of the United States' notice.  In any such proceeding, ATP-IP shall have the burden of demonstrating by a preponderance of the evidence that the delay or anticipated delay has been or will be caused by a force majeure event, that the duration of the delay or the extension sought was or will be warranted under the circumstances, that best efforts were exercised to avoid and mitigate the effects of the delay, and that ATP-IP complied with the requirements of this Section.  If ATP-IP carries this burden, the delay at issue shall be deemed not to be a violation by ATP-IP of the affected obligation of this Consent Decree identified to the United States and the Court.

## VIII.  <u>DISPUTE RESOLUTION</u>

34.     Unless otherwise expressly provided for in this Consent Decree, the dispute resolution procedures of this Section shall be the exclusive mechanism to resolve disputes arising under or with respect to this Decree.  ATP-IP's failure to seek resolution of a dispute under this Section shall preclude ATP-IP from raising any such issue as a defense to an action by the United States to enforce any obligation of ATP-IP arising under this Decree.

14

35.     Informal Dispute Resolution.  Any dispute subject to Dispute Resolution under this Consent Decree shall first be the subject of informal negotiations.  The dispute shall be considered to have arisen when ATP-IP sends the United States a written Notice of Dispute.  Such Notice of Dispute shall state clearly the matter in dispute.  The period of informal negotiations shall not exceed 20 Days from the date the dispute arises, unless that period is modified by written agreement.  If the Parties cannot resolve a dispute by informal negotiations, then the position advanced by the United States shall be considered binding unless, within 20 Days after the conclusion of the informal negotiation period, ATP-IP invokes formal dispute resolution procedures as set forth below.

36.     Formal Dispute Resolution.  ATP-IP shall invoke formal dispute resolution procedures, within the time period provided in the preceding Paragraph, by serving on the United States a written Statement of Position regarding the matter in dispute.  The Statement of Position shall include, but need not be limited to, any factual data, analysis, or opinion supporting ATP-IP's position and any supporting documentation relied upon by ATP-IP.

37.     The United States shall serve its Statement of Position within 45 Days of receipt of ATP-IP's Statement of Position.  The United States' Statement of Position, as applicable, shall include, but need not be limited to, any factual data, analysis, or opinion supporting that position and any supporting documentation relied upon by the United States.  The United States' Statement of Position shall be binding on ATP-IP, unless ATP-IP files a motion for judicial review of the dispute in accordance with the following Paragraph.

38.     ATP-IP may seek judicial review of the dispute by filing with the Court and serving on the United States, in accordance with Section XI (Notices), a motion requesting

15

judicial resolution of the dispute.  The motion must be filed within 45 Days of receipt of the

United States' Statement of Position pursuant to the preceding Paragraph.  The motion shall

contain a written statement of ATP-IP's position on the matter in dispute, including any

supporting factual data, analysis, opinion, or documentation, and shall set forth the relief

requested and any schedule within which the dispute must be resolved for orderly

implementation of the Consent Decree.

39.     The United States shall respond to ATP-IP's motion within the time period

allowed by the Local Rules of this Court.  ATP-IP may file a reply memorandum to the extent

permitted by the Local Rules.

40.     <u>Standard of Review</u>.  ATP-IP shall bear the burden of demonstrating that its

position complies with this Consent Decree and better furthers the objectives of the Consent

Decree.

41.     The invocation of dispute resolution procedures under this Section shall not, by

itself, extend, postpone, or affect in any way any obligation of ATP-IP under this Consent

Decree, unless and until final resolution of the dispute so provides.  Stipulated penalties with

respect to the disputed matter shall continue to accrue from the first Day of noncompliance, but

payment shall be stayed pending resolution of the dispute.  If ATP-IP does not prevail on the

disputed issue, stipulated penalties shall be assessed and paid as provided in Section VI

(Stipulated Penalties).

## IX.  <u>EFFECT OF SETTLEMENT/RESERVATION OF RIGHTS</u>

42.     This Consent Decree resolves the judicial civil penalty and injunctive relief

claims of the United States against ATP-IP for the violations alleged in the Complaint filed in

this action through the date of lodging this Consent Decree with the Court.

43.     The United States reserves all legal and equitable remedies available to enforce the provisions of this Consent Decree.

44.     The United States reserves all legal and equitable claims for, including but not limited to, response and removal costs, expenses, damages including natural resource damages, criminal liability, and other appropriate relief.  This Consent Decree shall not be construed to limit the rights of the United States to obtain additional relief under any federal law, state law, implementing regulations of federal or State law, or permit conditions, except as expressly specified in this Consent Decree.

45.     In any subsequent administrative or judicial proceeding initiated by the United States for injunctive relief, civil penalties, response or removal costs, expenses, damages including natural resource damages, criminal liability, or other appropriate relief relating to the Facility or ATP-IP's violations alleged in the Complaint, ATP-IP shall not assert, and may not maintain, any defense or claim based upon the principles of waiver, res judicata, collateral estoppel, issue preclusion, claim preclusion, claim-splitting, or other defenses based upon any contention that the claims raised by the United States in the subsequent proceeding were or should have been brought in the instant case, except with respect to the claims that have been specifically resolved pursuant to Paragraph 42 of this Section.

46.     This Consent Decree is not a permit, or a modification of any permit, under any federal, state, or local laws or regulations.  ATP-IP is responsible for achieving and maintaining complete compliance with all applicable federal, state, and local laws, regulations, orders, and permits.  ATP-IP's compliance with this Consent Decree shall be no defense to any action

commenced pursuant to said laws, regulations, orders, or permits, except as set forth herein.  The United States does not, by its consent to the entry of this Decree, warrant or aver in any manner that ATP-IP's compliance with any aspect of this Consent Decree will result in compliance with provisions of the CWA, OCSLA, or with any other provisions of federal, state, or local laws, regulations, orders, or permits.

47.     This Consent Decree does not limit or affect the rights of ATP-IP or of the United States against any third parties that are not party to this Consent Decree, nor does it limit the rights of third parties that are not party to this Consent Decree against ATP-IP, except as otherwise provided by law.

48.     ATP-IP hereby covenants not to sue and agrees not to assert any claims related to the violations alleged in the Complaint against the United States pursuant to the CWA, OPA, or any other federal law, state law, or regulation including, but not limited to, any direct or indirect claim for reimbursement from the Oil Spill Liability Trust Fund, or pursuant to any other provision of law.

49.     This Consent Decree shall not be construed to create rights in, or grant any cause of action to, any third party not party to this Consent Decree.

50.     Except as otherwise provided in this Consent Decree, ATP-IP reserves all legal and equitable claims and defenses in any future claims brought by the United States or any other person against ATP-IP.

## X.  COSTS

51.     The Parties shall bear their own costs related to this action, including attorneys' fees, except the United States shall be entitled to collect costs (including attorneys' fees)

incurred in any action necessary to enforce this Consent Decree.

## XI.  <u>NOTICES</u>

52.      Unless otherwise specified herein, whenever notifications, certifications,

submissions, reports, or communications are required by this Consent Decree, they shall be made

in writing and addressed to all parties as follows:

<u>As to the United States:</u>


     To the U.S. Department of Justice:

          Chief (re: DJ # 90-5-1-1-10681/1)
          Environmental Enforcement Section
          Environment and Natural Resources Division
          U.S. Department of Justice
          P.O. Box 7611
          Washington, DC  20044-7611
          (202) 514-0097 (facsimile)


     To EPA:

          OPA Enforcement Coordinator
          U.S. Environmental Protection Agency, Region 6
          1445 Ross Avenue, Suite 1200, 6SF-PC
          Dallas, TX 75202-2733
          (214) 665-7447 (facsimile)

          Tucker Henson
          Assistant Regional Counsel
          U.S. Environmental Protection Agency, Region 6
          1445 Ross Avenue, Suite 1200, 6RC-S
          Dallas, TX 75202-2733


     To DOI/BSEE:

          Eric Andreas
          Attorney-Advisor

Division of Mineral Resources
Branch of Petroleum and Offshore Resources
Office of the Solicitor
U.S. Department of the Interior
1849 C Street, NW
Washington, DC 20240

Director
Bureau of Safety and Environmental Enforcement
U.S. Department of the Interior
1849 C Street, NW
Washington, DC 20240

As to ATP-IP:

President
PE-ATP Innovator, Inc.
General Partner
4488 Onondaga Blvd.
Syracuse, NY 13219

Chet Thompson
Crowell & Moring
1001 Pennsylvania Ave., NW
Washington, DC 20004-2595

53.     Any Party may, by written notice to the other Party, change its designated notice

recipient or notice address provided above.

54.     Notices submitted pursuant to this Section shall be deemed submitted upon

mailing, unless otherwise provided in this Consent Decree or by mutual agreement of the Parties

in writing.

## XII.  EFFECTIVE DATE

55.     The Effective Date of this Consent Decree shall be the date upon which this

Consent Decree is entered by the Court or a motion to enter the Consent Decree is granted,

whichever occurs first, as recorded on the Court's docket.

## XIII.  RETENTION OF JURISDICTION

56.     The Court shall retain jurisdiction over this case until termination of this Consent

Decree for the purpose of effectuating or enforcing compliance with the terms of this Decree.

## XIV.  MODIFICATION

57.     The terms of this Consent Decree may be modified only by a subsequent written

agreement signed by all the Parties.  Where the modification constitutes a material change to this

Decree, it shall be effective only upon approval by the Court.

58.     Any disputes concerning modification of this Decree shall be resolved pursuant to

Section VIII (Dispute Resolution), provided, however, that, instead of the burden of proof

provided by Paragraph 40, the Party seeking the modification bears the burden of demonstrating

that it is entitled to the requested modification in accordance with Federal Rule of Civil

Procedure 60(b).

## XV.  TERMINATION

59.     After ATP-IP has (i) completed the requirements of Paragraph 12, (ii) paid the

civil penalty and any accrued stipulated penalties as required by this Consent Decree, and (iii)

scrapped or salvaged the ATP Innovator or sold the ATP Innovator to a third party and complied

with the notice requirements set forth in Paragraphs 5 and 14 to the extent such requirements are

triggered, ATP-IP may serve upon the United States a Request for Termination, stating that

ATP-IP has satisfied those requirements, together with all necessary supporting documentation.

60.     Following receipt by the United States of ATP-IP's Request for Termination, the

Parties shall confer informally concerning the Request and any disagreement that the Parties may

have as to whether ATP-IP has satisfactorily complied with the requirements for termination of this Consent Decree.  If the United States agrees that the Decree may be terminated, the Parties shall submit, for the Court's approval, a joint stipulation terminating the Decree.

61.     If the United States does not agree that the Decree may be terminated, ATP-IP may invoke Dispute Resolution under Section VIII (Dispute Resolution).  However, ATP-IP shall not seek Dispute Resolution of any dispute regarding termination until 90 Days after service of its Request for Termination.

## XVI.  PUBLIC PARTICIPATION

62.     This Consent Decree shall be lodged with the Court for a period of not less than 30 Days for public notice and comment.  The United States reserves the right to withdraw or withhold consent if the comments regarding the Consent Decree disclose facts or considerations indicating that the Consent Decree is inappropriate, improper, or inadequate.  ATP-IP agrees not to oppose entry of this Consent Decree by the Court or to challenge any provision of the Decree, unless the United States has notified ATP-IP in writing that it no longer supports entry of the Decree.  ATP-IP consents to entry of this Consent Decree without further notice.

## XVII.  SIGNATORIES/SERVICE

63.     The Acting Assistant Attorney General, Environment and Natural Resources Division, United States Department of Justice, on behalf of the United States, and each undersigned representative of ATP-IP certify that he or she is fully authorized to enter into the terms and conditions of this Consent Decree and to execute and legally bind the Party he or she represents to the terms of this Decree.

64.     This Consent Decree may be signed in counterparts, and such counterpart

signature pages shall be given full force and effect.

65.     ATP-IP agrees to accept service of process by mail with respect to all matters arising under or relating to this Consent Decree.  All Court filings will be served through the Court's electronic case filing system.

## XVIII.  INTEGRATION

66.     This Consent Decree constitutes the final, complete, and exclusive agreement and understanding among the Parties with respect to the settlement embodied in the Decree and supersedes all prior agreements and understandings, whether oral or written, concerning the settlement embodied herein.  No other document, nor any representation, inducement, agreement, understanding, or promise, constitutes any part of this Decree or the settlement it represents, nor shall it be used in construing the terms of this Decree.

## XIX.  FINAL JUDGMENT

67.     Upon approval and entry of this Partial Consent Decree by the Court, this Decree shall constitute a final judgment of the Court as to the United States and ATP-IP.  The Court finds that there is no just reason for delay and therefore enters this Judgment as a final judgment under Fed. R. Civ. P. 54 and 58.


**This Consent Decree is dated and entered this 7th  day of _____ May _____, 2015.**


*Nannette Jolivette Brown*
**UNITED STATES DISTRICT JUDGE**
**Eastern District of Louisiana**

23

Signature Page to Partial Consent Decree in *U.S. v. ATP Oil & Gas Corp. and ATP Infrastructure Partners, LP*

**FOR PLAINTIFF UNITED STATES OF AMERICA:**


SAM HIRSCH
Acting Assistant Attorney General
United States Department of Justice
Environment and Natural Resources Division


JASON T. BARBEAU
Senior Attorney
United States Department of Justice
Environment and Natural Resources Division
Environmental Enforcement Section
P.O. Box 7611, Ben Franklin Station
Washington, DC 20044


KENNETH A. POLITE
Eastern District of Louisiana


SHARON D. SMITH
Assistant United States Attorney
650 Poydras Street, Suite 1600
New Orleans, LA 70130

24

Signature Page to Partial Consent Decree in *U.S. v. ATP Oil & Gas Corp. and ATP Infrastructure Partners, LP*

**FOR PLAINTIFF UNITED STATES OF AMERICA (continued):**

K. JACK HAUGRUD
Acting Principal Deputy Solicitor
United States Department of the Interior
1849 C Street, N.W.
Washington, DC 20240

BRIAN SALERNO
Director
Bureau of Safety and Environmental Enforcement
United States Department of the Interior
1849 C Street, N.W.
Washington, DC 20240

Signature Page to Partial Consent Decree in *U.S. v. ATP Oil & Gas Corp. and ATP Infrastructure Partners, LP*

**FOR PLAINTIFF UNITED STATES OF AMERICA (continued):**

RON CURRY
Regional Administrator
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue
Dallas, Texas 75202-2733

TUCKER HENSON
Assistant Regional Counsel
U.S. Environmental Protection Agency, Region 6
1445 Ross Avenue, Suite 1200, 6RC-S
Dallas, Texas 75202-2733

Signature Page to Partial Consent Decree in *U.S. v. ATP Oil & Gas Corp. and ATP Infrastructure Partners, LP*

**FOR PLAINTIFF UNITED STATES OF AMERICA (continued):**

CYNTHIA GILES
Assistant Administrator
Office of Enforcement and Compliance Assurance
U.S. Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

SUSAN SHINKMAN
Director
Office of Civil Enforcement
Office of Enforcement and Compliance Assurance
United States Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

MARK POLLINS
Director
Water Enforcement Division
Office of Civil Enforcement
United States Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

CHERYL ROSE
Senior Attorney
Water Enforcement Division
Office of Civil Enforcement
United States Environmental Protection Agency
1200 Pennsylvania Ave., N.W.
Washington, DC 20460

27

Signature Page to Partial Consent Decree in *U.S. v. ATP Oil & Gas Corp. and ATP Infrastructure Partners, LP*

FOR ATP-IP:

ATP INFRASTRUCTURE PARTNERS, LP

By:   _____

Donald W. Scholl
President
PE-ATP Innovator Inc.